```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY as subrogee OF NICKELS MIDWAY PIER, L.L.C., | HON. JEROME B. SIMANDLE<br><br>Civil No. 03-3857 (JBS/JS) |
| Plaintiff, | |
| v. | **OPINION** |
| ANDREW E. WEINER, et al., | |
| Defendants. | |
| WILD WAVES, L.L.C., et al., | |
| Third Party Plaintiffs/Defendants, | |
| v. | |
| NICKELS MIDWAY PIER L.L.C., et al., | |
| Third Party Defendants/Plaintiffs. | |

APPEARANCES:

Alan C. Milstein, Esq.
Fredric R. Cohen, Esq.
SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, PC
Fairway Corporate Center
4300 Haddonfield Road, Suite 311
Pennsauken, NJ 08109
    Counsel for Third Party Defendants/Plaintiffs Nickels Midway
    Pier L.L.C., Steven Nickels, John Nickels, and Angelo
    Nickels

Stanley P. Fishman, Esq.
Scott D. Samansky, Esq.
FISHMAN & MCINTYRE, PC
120 Eagle Rock Avenue
East Hanover, NJ 07936

    -and-

Willis Flower, Esq.
FORD, FLOWER & HASBROUCK
Central Square, Suite 42A
P.O. Box 405
New Road & Central Avenue
Linwood, NJ 08221
    Counsel for Third Party Plaintiffs/Defendants Wild Waves,
    L.L.C., Andrew E. Weiner and Jay Petkov

**SIMANDLE**, District Judge:

    This matter is presently before the Court on a motion filed by Third Party Defendants/Plaintiffs Nickels Midway Pier L.L.C., Steven Nickels, John Nickels, and Angelo Nickels ("Plaintiffs") asking the Court to reconsider its June 17, 2009 Findings of Fact and Conclusions of Law [Docket Item 163]. Plaintiffs find fault with three aspects of the Court's decision, arguing as follows: (1) The Court should have determined whether the various breaches of the lease by Third Party Plaintiffs/Defendants Wild Waves, L.L.C., Andrew E. Weiner and Jay Petkov ("Defendants") were material breaches; (2) the Court erred in finding that Plaintiffs had an obligation to mitigate their damages by rebuilding the Castle after it was burned down; and (3) the Court erred in apportioning damages because Plaintiffs' claims are, in reality, breach of contract claims and not claims of negligence. Plaintiffs then ask the Court to recalculate damages based on these asserted errors. For the reasons set forth below, the Court will deny Plaintiffs' motion to reconsider.

I.  **BACKGROUND**

This litigation was born of two fires, one on January 16, 2002, and one on July 16, 2002, at Nickels Midway Pier in Wildwood, New Jersey.  All parties agree that the fires were started by trespassers who illegally entered the Pier.  Plaintiffs were the owners of the Pier at the time of the fires, but had leased a significant portion of the Pier to Defendants.  The first fire occurred at Dracula's Castle ("the Castle"), an amusement attraction, and led to its total destruction.  The second fire began under the Pier and caused damage to various areas of the Pier.  In this Court's June 17, 2009 Findings of Fact and Conclusions of Law, the Court found that Defendants were both negligent and in breach of the lease as to the first fire, but that they were not liable for the second fire.

A review of this Court's seventy-six page Findings of Fact and Conclusions of Law, as well as the numerous related opinions from the Bankruptcy Court, the District Court, and the Third Circuit arising out of Plaintiffs' bankruptcy proceedings, along with decisions from the New Jersey Superior Court, will reveal both the length and litigious nature of the various proceedings between the present parties.  Perhaps as a consequence of these many streams of litigation, the parties continued to debate the precise issues to be decided by this Court throughout the underlying proceedings.  Plaintiffs' motion, perhaps not

3

surprisingly, once again turns on disputes regarding the nature of the claims presented and the questions to be answered by the Court.

For the purposes of this opinion, the Court will briefly summarize the facts as found by this Court in its Findings of Fact and Conclusions of Law.  As a preliminary matter, however, the Court found that certain matters were not before the Court, because those issues were properly before the Bankruptcy Court.  Specifically, the Court found that questions related to breach of any contract for sale of the Pier to Defendants was before the Bankruptcy Court and would not be decided.  (Findings of Fact and Conclusions of Law at 6-7.)  The Court similarly determined that questions of whether any breach of the lease was material were before the Bankruptcy Court and were not within the scope of issues to be decided.  (Id. at 7-8.)  The Court then turned to the issues properly before this Court.

As to the Castle fire, the Court first found that Defendants' negligence proximately caused the destruction of the Castle.  (Conclusions of Law ¶¶ 2-19.)  Specifically, the Court concluded that Defendants breached their duty of reasonable care by turning off the smoke alarms and the sprinkler systems within the Castle, contrary to applicable provisions of the New Jersey Uniform Fire Code and the accepted practices within Wildwood.  (Id. ¶¶ 2-12.)  The Court next found that Defendants' conduct in

turning off the sprinkler system and the smoke alarms similarly amounted to a breach of their obligations in the lease to "maintain . . . all equipment," and to "comply with all laws, orders, rules and requirements of governmental authorities." (Id. ¶ 23.)

The Court found that Defendants were not liable for the second fire. (Id. ¶¶ 20-22.)

After finding Defendants liable for both negligence and breach of contract for the Castle fire, the Court proceeded to apportion fault for the destruction of the Castle amongst Defendants, Plaintiffs, and several settling tortfeasors pursuant to N.J. Stat. Ann. §§ 2A:15-5.1 to -5.3(c). (Id. ¶¶ 24-34.) The Court found Plaintiffs to be 5% at fault, (id. ¶ 29), AMC Plumbing (Defendants' plumber) to be 15% at fault, (id. ¶ 30), the teenage arsonists to be 50% at fault, (id. ¶¶ 31-33), and Defendants to be 30% at fault, (id. ¶ 34).

Finally, the Court found that Plaintiffs' failure to make any reasonable attempt to rebuild the Castle amounted to a failure to mitigate and reduced damages that could have been avoided had Plaintiffs rebuilt the Castle or a similar structure. (Id. ¶¶ 39-40.) The Court then set forth a judgment, but stayed that judgment pending a final decision from the Bankruptcy Court.

On June 26, 2009, Plaintiffs filed the instant motion to reconsider.

5

**II. DISCUSSION**

   **A. Standard of Review**

Local Civil Rule 7.1(i) governs the Court's review of Defendants' motion for reconsideration. Rule 7.1(i) requires the moving party to set forth the factual matters or controlling legal authorities it believes the Court overlooked when rendering its initial decision. L. Civ. R. 7.1(i). To prevail on a motion for reconsideration, the movant must show:

> (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). To prevail under the third prong, the movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered." P. Schoenfeld Asset Management LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001) (internal quotations and citations omitted).

The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly. United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994); Maldonado v. Lucca, 636 F. Supp. 621, 629 (D.N.J. 1986).

**B.     Determination of Materiality**

Plaintiffs assert that the issue of materiality of Defendants' breach of the lease was properly before this Court and should have been so decided, pointing to assertions in the Joint Final Pretrial Order and Plaintiffs' pre-trial Proposed Findings of Fact and Conclusions of Law.  Defendants respond that this issue was not actually presented to the Court (observing that Defendants were prohibited from presenting arguments regarding the contract of sale that accompanied the lease) and was instead before the Bankruptcy Court.  The Court, having reviewed the record and the many exchanges regarding the scope of the trial, and for the reasons to be discussed, reconfirms that the issue of materiality was not properly before the Court and that the question is to be decided by the Bankruptcy Court, which alone has the necessary facts to make such a determination.

The Court does not find, and did not find, that Plaintiffs failed to raise the question of materiality in the Joint Final Pretrial Order,[1] but instead finds that no evidence or argument was actually presented regarding materiality and that the

---

[1] The Court acknowledges that it employed unartful language in its Findings of Fact and Conclusions of Law when addressing the question of materiality, which could be read broadly to suggest that materiality (as a whole) was raised only in post-trial submissions by Defendants.  (Findings of Fact and Conclusions of Law at 7-8).  Instead, that Court found that the question of whether or not the Court should decide materiality was raised for the first time in Defendants' proposed findings of fact and conclusions of law.

7

question of material breach is to be decided by the Bankruptcy Court (and is of far more significance to the bankruptcy proceedings than to the limited negligence and breach of lease claims before this Court, in which Plaintiffs seek only damages).

The scope of this case was best set forth by Plaintiffs themselves in their post-trial proposed findings of fact and conclusions of law: "The issues at trial were whether [Defendants were] in breach of the Lease and/or negligent, whether this conduct proximately caused or contributed to the fire damage and the amount of damages."  (Pls. Post-Trial Proposed Findings of Fact and Conclusions of Law ¶ 8.)  Plaintiffs presented no evidence (beyond a copy of the lease) or argument (beyond a brief statement of New Jersey law governing materiality) on whether Defendants' failure to maintain an operable sprinkler system and alarm system in the winter months was a material breach of the lease.  In fact, the first time Plaintiffs presented such argument is in the present motion to reconsider, in which Plaintiffs assert that the materiality of the breach is "obvious."[2]  Moreover, the Court excluded, at <u>Plaintiffs</u>'

---

[2] The Court notes, without deciding, that Plaintiffs' present argument regarding the central importance of the lease provisions designed to protect the Castle is somewhat weakened by another provision in the lease that permitted Defendants to tear down the Castle, on notice to Plaintiffs and with consent (not unreasonably withheld).  (Lease, Pls. Ex. 155 ¶ 20(a).)  It is not "obvious" that a party having the agreed-upon right to demolish the Castle commits a material breach if it fails to "maintain . . . all equipment" and "comply with all laws, orders,

repeated requests, any evidence or argument by Defendants regarding the contract for sale that accompanied the lease, as Plaintiffs maintained that the contract for sale was irrelevant to the issues to be determined.  (Oct. 22, 2008 Tr. at 9-10, 151-53; Nov. 26, 2008 Tr. at 40-50.)

This absence of evidence is not insignificant in light of the law governing material breach.  A breach is material where it "goes to the essence of the contract."  Ross Systems v. Linden Dari-Delite, Inc., 173 A.2d 258, 264 (N.J. 1961).  The New Jersey Supreme Court has given very little additional guidance for courts determining materiality, leaving the lower courts to set forth this analysis of materiality:

> Where a contract calls for a series of acts over a long term, a material breach may arise upon a single occurrence or consistent recurrences which tend to "defeat the purpose of the contract."  In applying the test of materiality to such contracts a court should evaluate "the ratio quantitatively which the breach bears to the contract as a whole, and secondly the degree of probability or improbability that such a breach will be repeated."

Magnet Resources, Inc. v. Summit MRI, Inc., 723 A.2d 976, 981 (N.J. Super. Ct. App. Div. 1998) (quoting Medivox Productions, Inc. v. Hoffmann-La Roche, Inc., 256 A.2d 803 (N.J. Super. Ct. Law Div. 1969) and citing Restatement (Second) of Contracts §§ 241 and 242); see Travelodge Hotels, Inc. v. Elkins Motel

---

etc." leading to the Castle's demolition.

Associates, Inc., No. 03-799, 2005 WL 2656676, at *5 (D.N.J. Oct. 18, 2005) (quoting Magnet).

The Third Circuit, faced with a similar absence of law from Delaware's highest court and a similar reliance on the Restatement (Second) of Contracts, set out the following factors for determining materiality:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Norfolk Southern Ry. Co. v. Basell USA Inc., 512 F.3d 86, 94 (3d Cir. 2008) (quoting Restatement (Second) of Contracts § 241 (1981)). These factors must be "applied in the light of the facts of each case." Id. Thus, many of the factors turn not only on the facts of the individual breach in question and the language of the contract, but on the parties' intent in forming the contract (the first factor), whether the breach occurred before or after the breaching party had substantially performed

10

its obligations under the contract (the third factor), whether the breaching party performed its obligations going forward (the fourth factor), and whether the breaching party's overall behavior "comported with standards of good faith and fair dealing." Id. at 94-95.

This Court was not presented with evidence from which to analyze materiality based on the above governing law. Plaintiffs' contractual relationship with Defendants extended over a period of years both before and after the time period relevant to this litigation and prominently included an alleged contract for sale expressly excluded from this litigation.  The Court has no evidence regarding the intent of the parties entering those contracts or their subsequent performance.  The lease itself contained many provisions not addressed in the lengthy proceedings herein, because they were not relevant to the issue of liability for fire damages.  Defendants' compliance or non-compliance with those other provisions was similarly not before this Court.  As a consequence, the Court cannot determine the purpose of the contract, the relationship between Defendants' deactivation of the sprinkler system and the smoke alarms with the contract as a whole, or whether Defendants substantially performed all other aspects of their contractual obligations.  Without this information, the Court cannot determine whether Defendants' failure to keep the sprinkler system and the smoke

alarms operable was a material breach of the contract.

This Court's mandate was narrow.  It was this Court's task to adjudicate the parties' respective liability for the two fires, including weighing comparative responsibility and determining damages proximately caused.  The parties were undoubtedly in agreement that this Court would make its factual and legal findings and not enter judgment because it would be up to the Honorable Gloria Burns, U.S. Bankruptcy Judge, to take these findings and mold them as a part of the constellation of overarching issues she was determining in the Nickels Midway Pier bankruptcy.  Plaintiffs' position that it was for this Court to determine materiality would thus not make sense in terms of the overall administration of the debtor's estate, which is solely within the Bankruptcy Court's province.  Indeed, Judge Burns' subsequent opinion determined questions of materiality of breach in many contexts, because Judge Burns has the whole matter of these parties' overall relationship before her.

More precisely, the Court was under the impression that Plaintiffs chose not to present this evidence because, as Defendants' maintained in closing arguments, all parties recognized that the question of materiality was to be decided by the Bankruptcy Court, whose obligation it is to determine whether either party materially breached the lease and contract for sale, in order to then preside over Plaintiffs' (the debtors) decision

to reject what have been found to be executory contracts.  <u>In re Nickels Midway Pier, LLC</u>, 372 B.R. 218, 225 (D.N.J. 2007) ("[A] determination of the parties' relative obligations under the Lease, if any, will inform Nickels' determination whether, in its business judgment, rejection of the Lease is appropriate."). Such an analysis is properly and squarely before the Bankruptcy Court, which alone has jurisdiction over both contracts and who has heard evidence regarding the full scope of the parties' intentions, obligations, and various breaches.  <u>In re Nickels Midway Pier, LLC</u>, Bankruptcy No. 03-49462 (GMB), Docket Item No. 756 (Sept. 30, 2009) ("Bankruptcy Court Memorandum Opinion").

Particularly telling, the Court notes that Plaintiffs asked the Bankruptcy Court to determine materiality not only by looking at the individual alleged breaches by Defendants, but also by collectively analyzing all of Defendants' breaches -- an analysis this Court cannot possibly undertake, given the limited scope of the evidence and issues presented herein.  Bankruptcy Court Memorandum Opinion at 42.  Thus, even if, for the sake of argument, this Court was mistaken regarding the parties' mutual consent to have issues of materiality decided by the Bankruptcy Court, this confusion does not and cannot merit reconsideration of the Court's decision to exclude materiality from its decision because the Court lacks the evidence necessary to make such a decision and the decision is properly (and necessarily

exclusively) before the Bankruptcy Court.[3] Accordingly, Plaintiffs' motion for reconsideration on this ground will be denied.

### C. Obligation to Mitigate

Plaintiffs ask the Court to reconsider its determination of damages on the grounds that the Court overlooked language in the lease that "superseded" Plaintiff's obligation to rebuild the Castle. Setting aside the fact that Plaintiffs failed to raise this argument in their post-trial proposed findings of fact and conclusions of law,[4] the Court finds no merit in it. As Defendants correctly point out, the lease does not require Defendants to rebuild or repair anything that is destroyed as a result of their negligence, only to pay for the repairs. The relevant provision reads:

> FIRE AND OTHER CASUALTY. . . . If the fire or other casualty is caused by the act or neglect of the Tenant or the Tenant's employees, agents, or customers, the Tenant shall pay for all repairs and all other damage.

---

[3] If Plaintiffs are not satisfied that the Bankruptcy Court, in weighing Defendants' collective breaches, considered the breaches found by this Court (and noted by the Bankruptcy Court at page twenty-eight of the Bankruptcy Court's September 30, 2009 Memorandum Opinion), Plaintiffs should present that concern to the Bankruptcy Court.

[4] On the issue of mitigation, Plaintiffs argued only that "Nickels could not rebuild the Castle because Weiner was in control of the leasehold and the parties were in litigation." (Pls. Post-Trial Proposed Findings of Fact and Conclusions of Law ¶ 74.)

14

(Lease, Pls. Ex. 155 ¶ 24). Thus, had Plaintiffs rebuilt the Castle, they could have demanded that Defendants pay for any costs. The Court, in finding that Plaintiffs failed to mitigate and could not recover for the harms that it could have avoided had it rebuilt the Castle (and sought payment from Defendants), still awarded Plaintiffs damages for the destruction of the Castle and the surrounding structures, but excluded only those harms that resulted from the prolonged failure to rebuild. (Conclusions of Law ¶¶ 39-40.) The Court sees no reason to reconsider this aspect of its decision.

### D. Apportionment of Liability

Finally, Plaintiffs argue that the Court erred in apportioning fault amongst the various tortfeasors because Plaintiffs' claims against Defendants are purely contractual claims for property damage, and under New Jersey's Comparative Negligence Statute, N.J. Stat. Ann. §§ 2A:15-5.1 to -5.3, apportionment of damages in contracts cases is only appropriate in personal injury actions. Defendants argue that nothing in the New Jersey Supreme Court's jurisprudence or the language of the statute supports such a limitation and further argues that Plaintiffs have clearly stated independent claims for both negligence and breach of contract. As the Court will explain below, the Court agrees with Defendants and will deny Plaintiffs' motion for reconsideration on this ground.

In Dunn v. Praiss, 656 A.2d 413, 419-420 (N.J. 1995), the New Jersey Supreme Court upheld the Appellate Division's apportionment of damages between a negligent tortfeasor and a party who breached a contract under N.J. Stat. 2A:15-5.1 to -5.3, stating:

> In the context of this case in which the breach of contractual duty appears to parallel closely the fault -- based duty of care imposed on a health-care provider, it is appropriate to allow for contribution.  In another case the issue might be less clear.  For example, assume that an HMO contract had authorized five days of hospital care for an appendectomy, but the HMO refused to cover more than three days.  The relationship between that breach of contract and a concurrent act of malpractice might be more difficult to assess. In this case the alleged failure of the HMO is more like a negligent act than an intentional breach of a contract.
> We therefore agree with the Appellate Division that it is appropriate in this case to apportion responsibility based on a breach of contract that is alleged to have proximately caused personal injury. Our jurisprudence has taken a pragmatic approach when giving effect to the conceptual differences between a breach of contract and a breach of a duty of reasonable care. See Pickett v. Lloyd's, 131 N.J. 457, 470, 621 A.2d 445 (1993) ("Compensation should not be dependent on what label we place on an action but rather on the nature of the injury inflicted on the plaintiff and the remedies requested."). The nature of the wrongdoer's conduct is not particularly relevant. See Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566-68, 410 A.2d 674 (1980) (explaining how there may be contribution between parties liable on entirely different bases).  For example, a manufacturer liable under warranty may seek contribution from a dealer who negligently repairs an automobile. [] A bank absolutely liable under a statute may seek contribution from a negligent attorney. [] A negligent supermarket may seek contribution from a manufacturer of a

> defective shopping cart strictly liable for a customer's injuries. [] The underlying principle is "that liability should be imposed in proportion to fault." [Blazovic v. Andrich, 124 N.J. 90, 112, 590 A.2d 222 (1991)].

Id. at 420 (some internal citations omitted).  In so finding, the New Jersey Supreme Court sought to enforce the underlying purpose of the Comparative Negligence Act to apportion damages based on principles of fault, regardless of the label affixed to the action.  Id.

The Court finds that this analysis is appropriately applied to the facts of this case.  First, though Dunn involved a case of personal injury, there is nothing in the above analysis that limits its applicability to personal injury cases and not property damages cases.  To the contrary, the reference to a strictly liable bank seeking contribution from a negligent attorney strongly suggests that the New Jersey Supreme Court intended its opinion to apply to harms beyond personal injury.  Furthermore, as Defendants correctly point out, the Comparative Negligence Statute expressly applies to "injury to the person or to real or personal property."  N.J. Stat. Ann. § 2A:15-5.2(a).  Thus, the Dunn holding extends to contracts claims based on property damage.

Second, Dunn is most appropriately applied here, where Plaintiffs actively litigated a negligence claim against Defendants, separate and apart from the claim for breach of

contract, and the Court found (consistent with Plaintiffs' arguments) that Defendants breached a tort duty independent of (but related to) their contractual duties.  Specifically, the Court concluded that Defendants breached their duty of reasonable care by turning off the smoke alarms and the sprinkler systems within the Castle, contrary applicable provisions of the New Jersey Uniform Fire Code and the accepted practices within Wildwood.  (Conclusions of Law ¶¶ 2-12.)  These negligent acts then supported the Court's conclusion that Defendants failed to "maintain . . . all equipment," and to "comply with all laws, orders, rules and requirements of governmental authorities" as required by the lease.  (Id. ¶ 23.)  Given Defendants' negligence, which "parallel[ed] closely" their various breaches, the Court had no difficulty comparing Defendants' fault to the fault of the other tortfeasors (as well as Plaintiffs) in this action.  (Id. ¶¶ 29-34.)  The Court, consequently, committed no error in apportioning damages in this action, even though there exists both a breach of lease claim and a negligence claim.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' motion to reconsider.  The accompanying Order shall be entered.


**February 1, 2010**                              **s/ Jerome B. Simandle**
Date                                              JEROME B. SIMANDLE
                                                  United States District Judge